UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
LAQUANA CHAPPELLE, individually and on behalf of          15 Civ. 4187 (GBD)
her infant children A.C., L.C., and X.C.,

                            Plaintiffs,          **COMPLAINT**

      -against-

KIM JETER, SHEILA BENNETT, JUDY ENWRIGHT,          PLAINTIFFS DEMAND
JACQUELINE McKNIGHT, individually and as deputy          TRIAL BY JURY
Commissioner, RONALD RICHTER, individually and
as Commissioner, and the CITY OF NEW YORK,

                         Defendants.
----------------------------------------------------------------------X

        Plaintiff and infant plaintiffs, appearing by their attorneys, Lansner & Kubitschek,

hereby allege against defendants as follows:

I. PRELIMINARY STATEMENT

        1.      This is a civil rights action, pursuant to 42 U.S.C. §1983, in which

plaintiffs seek declaratory and injunctive relief and damages to redress the deprivation, under

color of state law, of rights secured to them under the First, Fourth and Fourteenth Amendments

of the United States Constitution.  Plaintiffs also seek damages for the deprivation of their rights

under New York law.  The action arose from defendants' illegal seizure and continued detention

of infant plaintiffs from plaintiff without probable cause or due process of law, defendants'

interference with the liberty interest of plaintiff and infant plaintiffs in each other's care, and their

malicious prosecution of adult plaintiff in the New York Family Court.

II. JURISDICTION

        2.      Jurisdiction is conferred upon this Court by 28 U.S.C. §1343, which

1

provides for original jurisdiction over all actions brought pursuant to 42 U.S.C. §1983, and by 28 U.S.C. §1331, which provides jurisdiction over all cases brought pursuant to the Constitution and laws of the United States.  The Court has pendent jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C.§ 1367.

III. PARTIES

3.       Plaintiff LaQuana Chappelle resides in Brooklyn, New York, with her children, infant plaintiffs A.C., born in 2006, L.C., born in 2009, and X.C, born in 2012.

4.       Defendant City of New York ("City") is a municipal corporation, incorporated pursuant to the laws of the State of New York.

5.       Defendant City's Administration for Children's Services ("ACS") is authorized by New York State law to investigate reports of child abuse and neglect and to care for children in defendant City's custody.

6.       Defendant Ronald Richter was the Commissioner of ACS during the years 2012 through 2013, and is sued in his individual and official capacities.

7.       As Commissioner of ACS, defendant Richter was responsible for making and/or approving policies for ACS, including policies regarding the investigation of alleged child abuse or maltreatment, the removal and detention of children from their families, and the training and supervision of employees in ACS.

8.       As Commissioner of ACS, defendant Richter was responsible for ACS's compliance with the Constitution and the statutes, regulations, and common law of the United States and the State of New York.

9.       Upon information and belief, in 2012 and 2013, defendant Kim Jeter was

2

employed by the City of New York as a child protective specialist for ACS.

10.    Upon information and belief, in 2012 and 2013, defendant Sheila Bennett was employed as a supervisor for ACS.

11.    Upon information and belief, in 2012 and 2013, defendant Judy Enwright was employed as a child protective manager for ACS.

12.    Upon information and belief, in 2012 and 2013, defendant Jacqueline McKnight was employed as a deputy Commissioner of ACS, and assigned as the borough director of the Brooklyn office of ACS. As borough director, defendant McKnight made policy for the Brooklyn office of ACS.

IV. FACTS

13.    When plaintiff was a child, ACS removed her from her parents and placed her in foster care, in ACS custody. Plaintiff remained in foster care for approximately seven years.

14.    During her years in foster care, plaintiff experienced many traumatic events, including the suicide of her roommate. Plaintiff routinely suffered from verbal abuse inflicted by sadistic employees at the group homes where she resided, and misdiagnoses issued by incompetent foster care doctors. Plaintiff was assaulted by other foster children. Plaintiff greatly missed her family and was very depressed that she could not live with them.

15.    Despite those great deprivations, plaintiff was able to overcome her traumatic childhood. She graduated from high school and college, and is currently employed full-time as a social worker.

16.    Plaintiff has lived with her three children, A.C., L.C., and X.C., for the

3

children's entire lives, except for the period April 26, 2012 through June 19, 2012.

17.     Plaintiff has always provided loving care for infant plaintiffs, and has never abused or neglected infant plaintiffs.

18.     On April 24, 2012 plaintiff noticed swelling on the head of infant plaintiff X.C., and took him to the pediatrician, who sent plaintiff and X.C. to the hospital for testing.

19.     Medical tests showed a fracture on the left side of X.C.'s skull, and a hematoma over the scalp lining.

20.     Plaintiff was surprised to learn of X.C.'s injuries.  X.C. had not sustained the injuries while in plaintiff's care, and plaintiff did not know how X.C. had sustained the fracture or the hematoma.

21.     During the days before April 24, 2012, plaintiff had not noticed any change in infant plaintiff X.C.'s behavior, appetite, or demeanor suggestive of an injury.

22.     The hospital kept X.C. overnight for observation, and plaintiff stayed with X.C. in the hospital.

23.     Staff at the hospital reported to the New York State Central Register of Child Abuse and Maltreatment that infant plaintiff X.C., may have been the victim of child abuse and that plaintiff may have caused the abuse, solely because of plaintiff's inability to explain how X.C. had sustained the injuries.  Skull fractures in infants are more likely to be caused accidentally than by child abuse.

24.     The report about X.C. was incorrect.  At all times, plaintiff has provided loving care to all of her children, and has never abused or mistreated them.

25.     New York law requires that all reports of suspected child abuse or

maltreatment must be investigated by local (county or city) child abuse investigators.

26.     The overwhelming majority of reports to the New York State Central Register are determined, after investigation, to be unfounded, *i.e.*, not supported by any credible evidence whatsoever.

27.     In 2012, more than 71 percent of the reports to the State Central Register were determined, after investigation, to be unfounded.  Thus, any given report to the State Central Register was more than twice as likely to be false as to be true.

28.     Upon information and belief, the report of suspected child abuse of X.C. was transmitted electronically to the Brooklyn office of ACS for investigation.

29.     Upon information and belief, on April 25, 2012, ACS assigned defendant Jeter to investigate the report.

30.     Upon information and belief, ACS assigned defendant Bennett to supervise the investigation.

31.     Upon information and belief, ACS assigned defendant Enwright to supervise defendants Jeter and Bennett.

32.     Upon information and belief, ACS assigned defendant McKnight to supervise defendants Jeter, Bennett, and Enwright.

33.     On April 25, 2012, defendant Jeter interviewed plaintiff in the hospital and observed a positive, loving, and nurturing relationship between plaintiff and infant plaintiff X.C.

34.     Upon information and belief, on April 25, 2012, defendant Jeter interviewed friends and relatives of plaintiff, all of whom told defendant Jeter that plaintiff was a good, loving, and devoted mother, wholly committed to her children, who would never neglect or

abuse them.

35.     On April 25, 2012, defendant Jeter also interviewed infant plaintiffs A.C. and L.C. and observed them to be happy, healthy, and well cared for, with no signs of abuse or maltreatment.

36.     Upon information and belief, in investigating the allegations of child abuse, defendants Jeter, Bennett, and Enwright accessed the confidential records of plaintiff's own stay in foster care, years earlier.

37.     Upon information and belief, none of the defendants made any investigation into the cause of X.C.'s injuries or the identity of the person or persons who were present when X.C. sustained the injuries.

38.     Plaintiff, however, made a concerted effort to determine when and how X.C. had sustained the injuries.  She questioned all of the adults who had been with X.C. during the prior weeks, and all of them denied knowing how X.C. had been injured.

39.     Defendants Jeter and Bennett, with the knowledge and consent of defendant Enwright, and pursuant to the policies of defendants McKnight and Richter, ordered plaintiff to appear at their office for a conference on April 26, 2012.  At said conference, defendant Jeter accused plaintiff of abusing drugs.  When plaintiff responded that she did not use drugs, defendant Jeter ordered plaintiff to take a drug test immediately and then go to the Family Court.

40.     While plaintiff was at the laboratory undergoing the drug test, defendant Jeter went to the Family Court, with the approval of defendants Bennett and Enwright, and in accordance with the policy of defendants City, McKnight, and Richter, defendant Jeter filed a

6

petition in the Family Court of the State of New York, County of Kings, falsely charging plaintiff

with abusing infant plaintiffs A.C., L.C., and X.C.

       41.     Defendant Jeter also falsely alleged, based upon plaintiff's confidential

foster care files, that plaintiff was mentally ill and abused drugs, and that the mental illness and

drug abuse made plaintiff a neglectful mother.

       42.     Said allegations were false and defendant Jeter knew or should have

known they were false.  Defendant Jeter concealed from the Family Court the fact that plaintiff's

mental problems had all occurred years earlier, when she was a child living through the trauma of

foster care.

       43.     Upon information and belief, defendant Jeter hurried into the Family Court

while plaintiff was at the drug testing laboratory, in order to secure an *ex parte* order from the

Family Court authorizing the removal of all three infant plaintiffs from plaintiff.  Upon receiving

the order, defendant Jeter left the courthouse as quickly as possible, and immediately removed all

three infant plaintiffs, and took them into ACS custody.

       44.     Upon information and belief, defendant Jeter concealed from the Family

Court judge the fact that plaintiff was not present in court because defendant Jeter had ordered

plaintiff to submit to a drug test.

       45.     When plaintiff arrived at the Family Court, she discovered that her case

had already been heard and that the judge had issued an order *ex parte* that infant plaintiffs be

removed from plaintiff.

       46.     Plaintiff attempted to have the case recalled, and filed papers requesting

the return of her children, but the Court refused to recalendar the case because defendant Jeter

had already left the building.

47.     On April 27, 2012, plaintiff's baby-sitter confessed to having dropped infant plaintiff X.C. on his head on April 18, 2012.  The baby-sitter had not noticed any cuts, bruising or swelling on X.C.'s head, and had therefore thought that X.C. had not been injured.

48.     Upon information and belief, that same day, the baby-sitter told defendant Jeter that X.C. had fallen and hit his head on April 18, 2012, while the baby-sitter was caring for X.C. and plaintiff was not at home.

49.     Despite discovering the actual cause of X.C.'s injuries, and the fact that plaintiff was not in any way responsible for the injuries, defendants continued to detain infant plaintiffs from plaintiff.

50.     On April 30, 2012, defendants Bennett and Jeter made a written report to the Family Court, concealing the baby-sitter's confession from the Family Court judge.

51.     As a result of defendants' false statements, the Family Court judge ordered that infant plaintiffs remain separated from plaintiff.

52.     Upon information and belief, on May 14, 2012, a pediatrician board-certified in child abuse, who works as a consultant for ACS, and who had personally interviewed plaintiff, advised defendants, in writing, that the baby-sitter's explanation was plausible and that plaintiff was not responsible for X.C.'s injuries.

53.     Ignoring their own expert, defendants continued to detain infant plaintiffs from plaintiff.

54.     On June 18, 2012, plaintiff's request for the return of her children was heard in the Family Court.

8

55.     After hearing the evidence presented at said hearing, the Family Court judge ordered that all three infant plaintiffs be returned to plaintiff.

56.     On or about June 19, 2012, defendants returned infant plaintiffs to plaintiff.

57.     Despite the judge's order, defendants did not withdraw the charges of child abuse against plaintiff.

58.     Instead, defendants continued to prosecute plaintiff for abusing all three infant plaintiffs.

59.     Defendants also secured an order from the Family Court permitting defendants to make unannounced searches of plaintiff's home.

60.     For the next 14 months, defendants continued to search plaintiff's home frequently and to interfere in the relationship between plaintiff and infant plaintiffs, demanding that plaintiff comply with defendants' directives as a condition of keeping her children with her.

61.     On August 13, 2013,the Family Court dismissed all charges against plaintiff.

62.     Federal and state law requires that City defendants make reasonable efforts to prevent or eliminate the need for removal of a child.

63.     Defendants Jeter, Bennett, Enwright, McKnight, Richter and City failed to make any such efforts at any time.

64.     Upon information and belief, a notice of claim was filed on behalf of plaintiff and infant plaintiffs within 90 days after the acts complained of herein.

65.     More than 30 days have passed since the filing of the notice of claim, and

9

the claim has not been resolved.

## V. CLAIMS

### FIRST CAUSE OF ACTION

66.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 65.

67.     Upon information and belief, during the years 2012 and 2013, defendants City and Richter had a policy and/or practice of removing and detaining children from parents who did not abuse, neglect, or endanger the children, without probable cause, without due process of law, and without constitutionally adequate investigations, based solely or primarily upon information that the children or the children's siblings had been injured and the parent had no explanation for the injuries.

68.     Upon information and belief, during the years 2012 and 2013, all defendants implemented said policy in all cases of unexplained injuries, including cases in which the children's injuries were not suspicious for child abuse.

69.     Upon information and belief, defendants City and Richter failed to provide any standards determining the cause of injuries to children, and instead shifted the burden to the parents to explain the children's injuries, even when the parents had not witnessed the occurrence of the injuries.

70.     Acting pursuant to said policy, on April 26, 2012, defendants Jeter and Bennett, with the knowledge and consent of defendants Enwright and McKnight, removed infant plaintiffs from plaintiff, without probable cause and without due process of law.

71.     Acting pursuant to said policy, defendants City, Richter, Jeter, Bennett, Enwright, and McKnight detained infant plaintiffs from the custody of adult plaintiff for nearly

10

two months, without probable cause and without due process of law.

72.     Said policy and/or practice, and the removal and detention of infant plaintiffs, constituted an unlawful seizure of infant plaintiffs, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.  Said policy and/or practice, and its implementation, were gross deviations from acceptable professional conduct.

73.     Said policy and/or practice constituted an unlawful interference with plaintiff's liberty interests in the care and custody of her children, and her right to intimate association with her family, in violation of the First and Fourteenth Amendments to the United States Constitution.  Said policy and/or practice, and its implementation, were gross deviations from acceptable professional conduct.

74.     Said policy and/or practice, and the removal and detention of infant plaintiffs, constituted an unlawful interference with infant plaintiffs' liberty interest in their family, and their right to intimate association with their family, in violation of the First and Fourteenth Amendments to the United States Constitution.

75.     As a result of defendants' actions, adult plaintiff suffered the loss of the custody of her children, lost wages, incurred medical, legal, counseling, and other expenses; the infant plaintiffs suffered the loss of liberty and of the care and guidance of their mother, and all plaintiffs suffered extreme humiliation, pain and suffering, terror, mental anguish and depression.

## SECOND CAUSE OF ACTION

76.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 75.

77.     Defendants City and Richter provided grossly inadequate and unprofessional training and supervision to their agents and employees regarding:

11

a. investigating child abuse and neglect cases;

b. determining whether there exists probable cause to believe that continuing in the care of a parent presents an imminent danger to the child's life or health;

c. determining whether there exists probable cause to believe that returning to the care of a parent presents an imminent danger to the child's life or health;

d. determining whether there exists probable cause to believe that a parent has neglected or abused his or her child;

e. the provision of adequate notice and an opportunity to be heard prior to, or immediately after, the removal of a child;

f. the constitutional rights of parents and children in child welfare investigations;

g. the rights of parents to be free from malicious prosecution of child abuse and child neglect; and,

h. withdrawing child abuse cases when probable cause dissipates.

78. Defendants City and Richter knew or should have known that their employees were improperly trained and supervised in said issues.

79. Defendants City and Richter knew or should have known that their employees would confront said issues in their work and that, without training, would make the wrong decisions on said issues.

80. By reason of their lack of training, defendants Jeter, Bennett, McKnight and Enwright improperly removed the infant plaintiffs from the custody of adult plaintiff.

81. By reason of their lack of training, defendants Jeter, Bennett, McKnight

12

and Enwright detained infant plaintiffs from adult plaintiff for nearly two months without adequate notice to plaintiff, without adequate investigation, without probable cause, and without due process of law.

82. By reason of their lack of training, defendants Richter, Jeter, Bennett, Enwright, and McKnight maliciously prosecuted plaintiff in the Family Court for more than 14 months.

83. As a result of defendants' actions, adult plaintiff suffered the loss of the custody of her children, lost wages, incurred medical, legal, counseling, and other expenses; the infant plaintiffs suffered the loss of liberty and of the care and guidance of their mother, and all plaintiffs suffered extreme humiliation, pain and suffering, terror, mental anguish and depression.

THIRD CAUSE OF ACTION

84. Plaintiffs reallege and incorporate by reference paragraphs 1 through 83.

85. Upon information and belief, from 2012 to 2013, defendants City and Richter had a policy or standard practice of commencing and continuing child protective proceedings based on information that they know, or should know, is false or unreliable.

86. Acting pursuant to said policy, on April 26, 2012, defendants City Richter, Jeter, McKnight, Enwright, and Bennett commenced child abuse proceedings against adult plaintiff.

87. Acting pursuant to said policy, from April 26, 2012, until August 13, 2013, defendants City, Richter, Jeter, Bennett, Enwright, and McKnight continued the prosecution of adult plaintiff in the Family Court.

88. Said Defendants caused said charges to be filed and continued willfully,

13

maliciously, without probable cause, and for reasons other than to see justice done.

89.     Said Defendants caused said charges to be filed having no probable cause to believe that adult plaintiff was guilty of child abuse or neglect, and continued after probable cause dissipated.

90.     Said Defendants caused said charges to be filed and continued with the intent to cause harm and injury to the plaintiff and infant plaintiffs and not for the protection of the infant plaintiffs.

91.     In commencing and continuing said proceedings, defendants City, Richter, Jeter, Bennett, McKnight and Enwright, in gross and wanton disregard of plaintiff's rights, violated plaintiff's right to be free of abuse of process under the Fourth and Fourteenth Amendments to the United States Constitution.

92.     In the alternative, defendants City and Richter failed to adopt any policies or standards for deciding whether to continue child protective proceedings in Family Court against parents.

93.     Defendants City and Richter knew or should have known that their failure to adopt policies or standards would cause their employees to abuse their power by continuing child protective proceedings maliciously against parents and caretakers, after probable cause dissipated.

94.     In continuing said charges, defendants City, Richter, Jeter, Bennett, McKnight, and Enwright, in gross and wanton disregard of plaintiff's rights, violated plaintiff's rights to be free of malicious prosecution under the Fourth and Fourteenth Amendments of the United States Constitution.

14

95.     As a result of defendants' actions, adult plaintiff suffered the loss of the custody of her children, lost wages, incurred medical, legal, counseling, and other expenses; the infant plaintiffs suffered the loss of liberty and of the care and guidance of their mother, and all plaintiffs suffered extreme humiliation, pain and suffering, terror, mental anguish and depression.

FOURTH CAUSE OF ACTION

96.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 95.

97.     In commencing and continuing child protective proceedings against plaintiff in the Family Court, all defendants prosecuted plaintiff maliciously and without probable cause, in violation of the laws of the State of New York.

98.     As a result of defendants' actions, adult plaintiff suffered the loss of the custody of her children, lost wages, incurred medical, legal, counseling, and other expenses; the infant plaintiffs suffered the loss of liberty and of the care and guidance of their mother, and all plaintiffs suffered extreme humiliation, pain and suffering, terror, mental anguish and depression.

FIFTH CAUSE OF ACTION

99.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 98.

100.    By removing and detaining the infant plaintiffs from plaintiff, all defendants unlawfully interfered with plaintiff's custody of her infant children, in violation of New York law.

101.    As a result of defendants' actions, adult plaintiff suffered the loss of the custody of her children, lost wages, incurred medical, legal, counseling, and other expenses; the infant plaintiffs suffered the loss of liberty and of the care and guidance of their mother, and all plaintiffs suffered extreme humiliation, pain and suffering, terror, mental anguish and depression.

15

SIXTH CAUSE OF ACTION

102.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 101.

103.    By removing and detaining infant plaintiffs, defendants unlawfully imprisoned infant plaintiffs.

104.    As a result of defendants' actions, adult plaintiff suffered the loss of the custody of her children, lost wages, incurred medical, legal, counseling, and other expenses; the infant plaintiffs suffered the loss of liberty and of the care and guidance of their mother, and all plaintiffs suffered extreme humiliation, pain and suffering, terror, mental anguish and depression.

SEVENTH CAUSE OF ACTION

105.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 104.

106.    In removing infant plaintiffs and detaining infant plaintiffs for nearly two months, defendants violated infant plaintiffs' right to be free of unlawful searches and seizures, protected by the Fourth Amendment of the United States Constitution.

107.    As a result of defendants' actions, adult plaintiff suffered the loss of the custody of her children, lost wages, incurred medical, legal, counseling, and other expenses; the infant plaintiffs suffered the loss of liberty and of the care and guidance of their mother, and all plaintiffs suffered extreme humiliation, pain and suffering, terror, mental anguish and depression.

EIGHTH CAUSE OF ACTION

108.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 107.

109.    All of the defendants had a duty to act with reasonable care toward plaintiff and with the highest degree of care toward the infant plaintiffs.

110.    Defendants' removal and detention of the infant plaintiffs constituted

16

gross breaches of said duty and gross deviations from accepted professional standards.

111.    As a result of defendants' actions, adult plaintiff suffered the loss of the custody of her children, lost wages, incurred medical, legal, counseling, and other expenses; the infant plaintiffs suffered the loss of liberty and of the care and guidance of their mother, and all plaintiffs suffered extreme humiliation, pain and suffering, terror, mental anguish and depression.

**WHEREFORE** plaintiffs respectfully request that judgment be entered:

1. Awarding plaintiff and the infant plaintiffs full and fair compensatory damages as decided by the jury; and

2. Awarding plaintiff and the infant plaintiffs full and fair punitive damages as decided by the jury; and

3. Awarding plaintiff and the infant plaintiffs interest from April 26, 2012; and

4. Awarding plaintiff and the infant plaintiffs reasonable attorney fees pursuant to 42 U.S.C. §1988; and

5. Granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      June 1, 2015

Carolyn A. Kubitschek
Lansner & Kubitschek
Attorneys for Plaintiffs
325 Broadway Suite 203
New York, New York  10007
212-349-0900
Ckubitschek@lanskub.com